1

2

3

4

5

6

7

8           IN THE UNITED STATES DISTRICT COURT

9           FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ANGELA MARIE THOMPSON,

11           Petitioner,              Case No. 1:05-cv-00141 ALA (HC)

12       vs.

13   DEBORAH L. PATRICK, Warden,[1]          <u>ORDER</u>

14           Respondent.

15   _____/

16       On August 28, 2008, this Court denied Petitioner Angela Marie Thompson's application

17   for a writ of habeas corpus. (Doc. 59).  Pending before this Court is Petitioner's Notice of

18   Appeal. (Doc. 61).  Before Petitioner can appeal this Court's judgement a certificate of

19   appealability must issue.  28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).

20       A Certificate of Appealability may issue under 28 U.S.C. § 2253 "only if the applicant

21   has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

22   "Under the controlling standard, a petitioner must sho [w] that reasonable jurists could debate

23   whether . . . the petition should have been resolved in a different manner or that the issues

24   presented were 'adequate to deserve encouragement to proceed further. " *Miller-El v. Cockrell*,

25   _____

26       [1]Deborah L. Patrick is substituted for her predecessor, Gloria Henry, as the warden where
     the prisoner is incarcerated, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

537 U.S. 322, 336 (2003)(internal quotations omitted).  This Court, therefore, must either issue a Certificate of Appealability or state the reasons why a certificate should not issue.  Fed. R. App. P. 22(b)(1).

**I**

Petitioner was convicted in the Tulare County Superior Court on December 10, 2001 of second degree murder of her daughter Rachel, assault, and felony child abuse.   Petitioner was also convicted of two misdemeanor counts of child abuse.  She is serving a sentence of twenty-five years to life imprisonment.

On February 9, 2005, Petitioner filed a timely application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(a).  Petitioner raised five federal constitutional claims: (1) that the prosecutor unethically led her sons to believe they would be prosecuted if they testified in her defense, in violation of her Sixth and Fourteenth Amendment rights; (2) that Petitioner's Sixth and Fourteenth Amendment rights were violated when the judge encouraged her son J. to invoke his Fifth Amendment rights and then struck all of his testimony; (3) that the judge violated Petitioner's Sixth and Fourteenth Amendment rights when he appointed a guardian ad litem for five of her minor sons and gave the guardian the power to invoke the sons's Fifth Amendment rights and attorney client privileges despite their desire to waive those rights; (4) that Petitioner's Fourteenth Amendment rights were violated when the court erroneously admitted other bad acts evidence and invited the jury to draw a prohibited propensity inference due to a deficient jury instruction; (5) that Petitioner's Sixth and Fourteenth Amendment rights were violated when a juror in voir dire intentionally concealed material information tending to show that he was not impartial, and had the juror been honest, there would have been grounds for a valid challenge for cause.  Petitioner's claims have been exhausted.

**II**

Section  2254(d) provides as follows:

(d) An application for a writ of habeas corpus on behalf of a

2

person in custody pursuant to the judgment of a State court shall
not be granted with respect to any claim that was adjudicated on
the merits in state court proceedings unless the adjudication of the
claim --

(1) resulted in a decision that was contrary to, or involved
an unreasonable application of, clearly established
Federal law, as determined by the Supreme Court of the
United States; or

(2) resulted in a decision that was based on an
unreasonable determination of the facts in light of the
evidence presented in the State court proceeding.

(e)(1) In a proceeding instituted by an application for a writ of
habeas corpus by a person in custody pursuant to the judgment of a
State court, a determination of a factual issue made by a State
court shall be presumed to be correct. The applicant shall have the
burden of rebutting the presumption of correctness by clear and
convincing evidence.

**III**

**A**

Petitioner asserted in her application for writ of habeas corpus that the prosecutor

unethically led her sons to believe they would be prosecuted if they testified in her defense, in

violation of her Sixth and Fourteenth Amendment rights. Petitioner contended that as a result,

two of her sons did not testify, and the other son refused on Fifth Amendment grounds to testify

that her daughter was solely responsible for Rachel's death.

Petitioner also argued that the prosecutor denied her due process by granting immunity

only to witnesses for the prosecution. For this proposition, Petitioner relied on *United States v.*

*Westerdahl*, 945 F.2d 1083 (9th Cir. 1991). In *Westerdahl*, the court granted an evidentiary

hearing to determine whether there was prosecutorial misconduct when there were two

conflicting stories and the defense only had one witness who could testify to the events. *Id.* at

1087. Petitioner's reliance on *Westerdahl* is misplaced. Petitioner was not denied due process

because two of her sons testified and presented her defense. "[A]n accused is not entitled to

compel a prosecutor to grant immunity to a potential witness." *United States v. Shirley*, 884

F.2d 1130, 1133 (9th Cir. 1989). The standard of review for prosecutorial misconduct in federal

1  habeas cases is "the narrow one of due process, and not the broad exercise of supervisory

2  power." *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974).  A defendant's due process rights

3  are violated if prosecutorial misconduct renders a trial "fundamentally unfair."  *Darden v.*

4  *Wainwright*, 477 U.S. 168 (1986).

5      A review of the entire proceedings, makes it clear that the prosecutor's conduct did not

6  render the trial fundamentally unfair to deprive Petitioner of her due process rights.  *See Hall v.*

7  *Whitley*, 935 F.2d at 165 ("We must review that claim on the merits, examining the entire

8  proceeding[s] to determine whether the prosecutor's remarks so infected the trial with unfairness

9  as to make the resulting conviction a denial of due process.") (quotations omitted).  "'[M]erely

10 warning a witness of the consequences of perjury' does not unduly pressure the witness's choice

11 to testify or violate the defendant's right to due process."  *Williams v. Woodford,* 384 F.3d 567,

12 603 (9th Cir. 2004) (quoting *United States v. Emuegbanum*, 268 F.3d 377, 300 (6th Cir. 2001).

**B**

14     Petitioner also contended that her Sixth and Fourteenth Amendment rights were violated

15 when the judge encouraged her son J. to invoke his Fifth Amendment rights and then struck all

16 of his testimony.

17     Petitioner cites *Webb v. Texas,* 409 U.S. 95 (1972), in support of her claim of judicial

18 misconduct.  In *Webb*, the trial judge "gratuitously singled out . . . one witness for a lengthy

19 admonition on the dangers of perjury," thereby implying "that he expected [the witness] to lie."

20 *Id.* at 97. The judge then proceeded to assure the witness "that if he lied, he would be prosecuted

21 and probably convicted for perjury, that the sentence for that conviction would be added on to

22 his present sentence, and that the result would be to impair his chances for parole."  *Id.*  The

23 witness subsequently refused to testify.  This was the only witness petitioner called for his

24 defense.  The Supreme Court concluded that the trial judge's remarks "effectively drove that

25 witness off the stand." *Id.* at 98.  The Court held that the trial judge had, in effect, denied the

26 defendant the right to present his own witnesses, thus violating his due process rights under the

4

1  Fourteenth Amendment. *Id.*

2        Here, the prosecutor informed the trial judge that there was the possibility that J., a 16

3  year-old boy, would perjure himself and could be facing molestation charges.  Given the serious

4  consequences that could result from J.'s testimony, the judge used his discretion to warn J. about

5  his right not to testify.  J. was also indecisive about testifying, appearing confused about what

6  questions he should answer and when he should invoke his Fifth Amendment rights.   After a

7  review of the trial record, it appears to this Court that the judge's questions and warnings were

8  designed to clear up uncertainties and ambiguities in both the testimony and the questioning.

9  Under *Webb* and its progeny, "[a] defendant's constitutional rights are implicated only where the

10  prosecutor or trial judge employs coercive or intimidating language or tactics that substantially

11  interfere with a defense witness' decision whether to testify."  *United States v. Vavages*, 151

12  F.3d 1185, 1189-90 (9th Cir.1998).  There was no evidence in the record that the trial judge's

13  actions had any impact on the substance of the testimony of any defense witness.  *Webb* is thus

14  clearly distinguishable.  Further, despite his attorney's advice and the judge's comments, J.

15  ultimately testified.  In *United States v. Jaeger,* Nos. 06-30621, 06-30622, 2008 WL 3861685

16  (9th Cir. Aug. 18, 2008), the Ninth Circuit held that a trial court does not commit misconduct

17  when it provides a brief, factual, and explanatory warning to a witness regarding the possibility

18  that he or she may be incriminated by testifying.  After the trial judge's warning, the witness in

19  *Jaeger* decided not to testify.  *Id.* at *3. The Ninth Circuit concluded in *Jaeger* that even though

20  the witness did not testify, the judge's actions did not violate the Defendant's Sixth Amendment

21  rights.  *Id.* at *5.  Here, J. testified, despite the numerous warnings from the judge regarding the

22  possibility of self-incrimination.

23        Petitioner also claimed that the trial judge improperly struck J.'s testimony after J.

24  refused to answer questions on cross-examination about Rachel's death.  Federal courts "do not

25  review questions of state evidence law."  *Jammal v. Van De Kamp,* 926 F.2d 918, 919 (9th Cir.

26  1991).  "Incorrect state court evidentiary rulings cannot serve as a basis for habeas relief unless

1    federal constitutional rights are affected." *Lincoln v. Sunn*, 807 F.2d 805, 816 (9th Cir. 1987).  A

2    state court's decision to exclude certain evidence must be so prejudicial as to jeopardize the

3    defendant's due process rights.  *Miller v. Stagner*, 757 F.2d 988, 994 (9th Cir.), *amended on*

4    *other grounds*, 768 F.2d 1090 (9th Cir.1985), *cert. denied*, 475 U.S. 1048, 1049, 89 L.Ed.2d 577,

5    579 (1986).  To evaluate whether exclusion of evidence reaches constitutional proportions, a

6    federal court must consider five factors: (1) the probative value of the excluded evidence on the

7    central issue; (2) its reliability; (3) whether it is capable of evaluation by the trier of fact; (4)

8    whether it is the sole evidence on the issue or merely cumulative; and (5) whether it constitutes a

9    major part of the attempted defense.  *Tinsley v. Borg*, 895 F.2d 520, 530 (9th Cir. 1990).

10   Accordingly, a reviewing court must balance the importance of the evidence against the state

11   interest in exclusion.  *Id.*

12           J. testified that Angel, Petitioner's daughter, abused and killed Rachel and that Petitioner

13   did not participate in or direct any of the acts.  However, when the prosecutor tried to

14   cross-examine him, he invoked his Fifth Amendment rights.  The court struck J.'s testimony.

15           The exclusion of J.'s testimony did not render Petitioner's trial fundamentally unfair.

16   Though J.'s testimony that Angel abused Rachel had probative value as to Petitioner's defense, it

17   was not the sole evidence supporting the defense.  Instead, J.'s testimony on direct examination

18   was cumulative to the evidence presented by Petitioner's other children (Matthew and Joshua).

19   Thus, in light of the *Tinsley* factors, the exclusion of J.'s testimony did not jeopardize

20   Petitioner's due process rights.

21                                                    **C**

22           Petitioner further contended that the judge violated her Sixth and Fourteenth Amendment

23   rights when he appointed a guardian ad litem for five of her minor sons and gave the guardian

24   the power to invoke the sons's Fifth Amendment rights and attorney client privileges despite

25   their desire to waive those rights.

26           The Sixth Amendment right to compulsory process guarantees a defendant the right to

6

present her defense. *Washington v. Texas,* 388 U.S. 14, 19 (1967). This right is fundamental to due process. *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973). However, this right is not absolute and is not violated by reasonable testimonial exclusions. *See Taylor v. Illinois*, 484 U.S. 400, 410 (1988) (the Sixth Amendment is not "an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence"); *Washington v. Texas,* 388 U.S. at 23 n.21 (enumerating examples of state law testimonial exclusions that would not violate the Sixth Amendment).

Petitioner had to establish that the guardian ad litem created a "substantial burden" on the creation of her defense. *Clark v. Arizona*, 548 U.S. 735, 792 (citing *U. S. v. Scheffer,* 523 U.S. 303, 316-17 (1998)). A substantial burden must unreasonably deprive Petitioner of testimony that is both "material and favorable" to her defense. *See U.S. v. Valenzuela-Bernal*, 458 U.S. 858, 859 (1982).

Here, the appointment of a guardian ad litem was reasonable. "[T]he mere invocation of [the Sixth Amendment right to compulsory process] cannot automatically and invariably outweigh countervailing public interest." *Taylor*, 484 U.S. at 414. The appointment of the guardian was in the public's interest, as it was necessary to protect Petitioner's five minor children from making inculpatory remarks.

Further, there was no indication that the appointment of the guardian ad litem diminished Petitioner's ability to build her defense by stripping her of material testimony. First, prior to the appointment of the guardian ad litem, three of Petitioner's sons had already testified on Petitioner's behalf. (Lodged Doc. No. 1 at 16-17). Second, also prior to the appointment of the guardian, the remaining two sons expressed their desire to invoke their Fifth Amendment privileges. Id. Third, testimony of Petitioner's friends, *Id.* at 18, and several expert witnesses, *Id.* at 18-19, all corroborated Petitioner's defense. Therefore, even with the appointment of the guardian ad litem, Petitioner's defense was more than adequate for purposes of the Sixth Amendment. *See Taylor*, 484 U.S. at 402-03, 416 (upholding the constitutionality of excluding

"surprise witnesses" testimony in defense of an accused, who only had two other witnesses).

**D**

Petitioner further asserted that her Fourteenth Amendment rights were violated when the court erroneously admitted other bad acts evidence and allegedly invited the jury to draw a prohibited propensity inference due to a deficient jury instruction.

Petitioner's entitlement to habeas relief on this ground does not turn on whether a state evidentiary law has been violated "but whether the trial court committed an error which rendered the trial so arbitrary and fundamentally unfair that it violate[s] federal due process." *Jammal*, 926 F.2d at 920 (quoting *Reiger v. Christensen*, 789 F.2d 1425, 1430 (9th Cir. 1986)). For an admission of evidence to violate due process there must be "*no* permissible inferences the jury may draw from [it]." *Jammal*, 926 F.2d at 920. The prior bad acts at issue included instances involving "hitting, food, sitting on the back, using older children to compel compliance and so forth." Repr. Tr. 1249 (Vol. 6). This evidence was presented by the prosecutor to demonstrate that Petitioner's oldest daughter acted at Petitioner's behest in order to punish Rachel. *Id.* at 1250. Based on this evidence, the jury could have inferred motive, intent, plan, state of mind, and/or absence of mistake or accident, all permissible inferences from the evidence of prior bad acts. (Lodged Doc. No. 1 at 59). However, the jury's actual use of this evidence is of no importance to the constitutionality of this issue, provided the jury instruction was proper. *Jammal,* 926 F.2d at 920 ("[e]vidence . . . will often raise more than one inference, some permissible, some not; [and this Court] must rely on the jury to sort them out in light of the court's instructions. Only if there are *no* permissible inferences . . . can its admission violate due process.").

Petitioner also challenged the prior bad acts jury instruction. In regards to the prior bad acts evidence, the jury was instructed as follows:

> Except as you may otherwise be instructed, such evidence, if believed, may not be considered by you to prove that defendant is a

person of bad character or that she has a disposition to commit crimes. It may be considered by you only for the limited purpose of determining if it tends to show a characteristic *method, plan or scheme* in the commission of criminal acts similar to the *method, plan or scheme* used in the commission of the offenses in this case which would further tend to show the existence of the intent, which is a necessary element of some of the crimes charged or the identity of the person who committed the crime, if any, of which the defendant is accused *or a clear connection* between the other offense and the one of which the defendant is accused so that it may be inferred that if the defendant committed the other offense or offenses, defendant also committed the crimes charged in this case.

Repr. Tr. 2012-13 (Vol. 10) (emphasis added). Petitioner claimed that this instruction created a reasonable likelihood that the jury used the evidence to infer propensity, which Petitioner claimed was unconstitutional. Petitioner credited the disconnect between the "clear connection" language and the "method, plan or scheme" language of the instruction for this deficiency.

Although this instruction may have been deficient, its deficiency only warrants habeas relief if the "instruction by itself so infected the entire trial that the resulting conviction violates due process." *McGuire*, 502 U.S. at 72 (internal quotations omitted). This instruction also may not be considered in isolation of the instructions as a whole. *Id.*

When read in the context of the instructions as a whole, there is no reasonable likelihood that this instruction permitted an inference of propensity. *See McGuire*, 502 U.S. at 74. First, the "clear connection" language was redundant in light of the "method, plan or scheme" language that precedes it. Repr. Tr. 2013 (Vol. 10). Thus, the instruction was correct when separated by the disjunctive "or," and neither clause permits misuse. The trial court's instructions expressly prohibited the jury from using the evidence to infer propensity. The trial court admonished the jury as follows: "For the limited purpose for which you may consider such evidence, you must weigh it in the same maner as you do all other evidence in this case, and you're not permitted to consider such evidence for any other purpose." *Id.* at 2013-14. Expressly prohibiting a jury from using prior crimes evidence to infer propensity is a recognized safeguard against possible misuse. *McGuire*, 502 U.S. at 74. When taken as a

whole, the jury instructions did not amount to a constitutional violation and does not warrant habeas relief.

**E**

Petitioner also contended that her Sixth and Fourteenth Amendment rights were violated when a juror intentionally concealed material information during the voir dire examination tending to show that he was not impartial, and had he been honest, there would have been grounds for a valid challenge for cause.

The standard for evaluating juror misconduct is whether the misconduct had a substantial and injurious effect or influence on the verdict. *Jeffries v. Wood,* 114 F.3d 1484, 1489 (9th Cir. 1997) (en banc).  To establish juror misconduct based on voir dire questions, a party must demonstrate the following: (1) a juror failed to answer honestly a material question in voir dire; and (2) a correct response would have provided a basis for challenge for cause. *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984).

On November 16, 2001, Petitioner filed a motion for a new trial, based on alleged jury misconduct.  In her motion, Petitioner claimed that Juror No. 6, the foreperson, concealed relevant facts.  The basis of the claim was a declaration from Juror No. 11 that during deliberations, Juror No. 6 "talked about himself being abused as a child and that he knew about child abuse.  He indicated that his father was in the service and would swing his belt buckle, hitting him in the head and knocking him out."  Prior to the trial, each prospective juror was given a written questionnaire to answer.  Question 19 posed the following question: "How were you disciplined as a child?  Do you feel it was appropriate?"  Juror No. 6 responded: "Normal type; grounded, no TV, no phone no toys.  Must stay at home and yard only.  Discipline was appropriate."  Petitioner argued in her motion for a new trial that the above facts demonstrated that juror No. 6 lied under oath during his voir dire examination about serious prior abuse he had suffered as a child.   During the proceedings for the motion for a new trail, Juror No. 1 alleged: "Juror No. 6, the foreperson, did talk about an incident of being hit with a belt buckle

by his father.  He spoke of this near the middle or end of deliberations.  I recall him also talking about becoming unconscious as part of this incident.  I do not recall, however, exactly how he explained this unconsciousness came about during the incident with his father." Doc. No. 1 at 67.  The prosecutor countered this evidence with several affidavits from other jurors.  Juror No. 6 stated in his or her affidavit:

> During the deliberations. we dealt with the issue of child abuse . . . the degree and level of child abuse discussed . . . and I myself brought up an instance with my father where he spanked me one time with a belt on the buttocks.  I did not say the brass buckle on his belt hit me in the head and knocked me out." *Id.*

Jurors Nos. 2, 8, and 5 also testified that Juror No. 6 did not make the alleged statement about being hit in the head by a brass belt buckle.

The trial court denied the motion for a new trial, concluding that the overwhelming weight of the evidence was that Juror No. 6 did not make the statement that he was hit on the head with a brass belt buckle.

The California Court of Appeal held that Juror No. 6 did not answer a material question dishonestly or conceal information during voir dire.  It reasoned as follows:

> The question asked of juror No. 6 on the questionnaire was how he was disciplined as a child.  The question asked for a general response.  It did not ask for specific instances of discipline but asked for a general overview of discipline as a child.  Juror No. 6 was hit by a belt one time.  From the answer it is clear that this was not a usual method of discipline in the household, but a one-time instance.

The Court of Appeal's conclusion that Juror No. 6 was not dishonest in his answer to a material question in voir dire is neither contrary to clearly established Federal law nor involved an unreasonable application of clearly established Federal law.  Question 19 asked the potential juror about how he or she was disciplined generally, not about specific instances.   Accordingly, Petitioner was not entitled to relief on this claim.

IT IS HEREBY ORDERED that a certificate of appealability shall not issue because

reasonable jurists could not debate that this petition should have been resolved in a different manner or that the issues presented deserve encouragement to proceed further.

DATED: October 7, 2008_____   /s/ Arthur L. Alarcón_____
                                                    UNITED STATES CIRCUIT JUDGE
                                                    Sitting by Designation